**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **LYNN BERGMAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.**_____ |
| | § | |
| **CITY HOUSE, INC,** | § | |
| | § | |
| **Defendant.** | § | **JURY DEMANDED** |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT & JURY DEMAND**

Plaintiff Lynn Bergman ("Bergman" or "Plaintiff") files this Original Complaint against Defendant City House, Inc., in its assumed or common name, ("City House" or "Defendant") for violating federal and state law. The causes of action and summary of claims relating thereto are addressed below:

**I. PARTIES, JURISDICTION & VENUE**

1.  Ms. Bergman resides in Collin County, Texas.  During her employment with City House, Ms. Bergman worked primarily in Collin County, Texas.

2.  Defendant City House is a Texas Corporation with its primary place of business in 830 Central Parkway East, #350, Plano, Texas 75074.

3.  City House be served via its registered agent on file with the Texas Secretary of State: Sheri A. Messer, located at 830 Central Parkway East, #350, Plano, Texas 75074.

4.  This Court has jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act pursuant to 42 U.S.C. 2000e-5(f)(3) and 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.  Venue is proper in the Sherman Division of the United States District Court for the

Eastern District of Texas pursuant to 28 U.S.C. § 1391(b) as all or a substantial part of the acts or omissions giving rise to Plaintiff's causes of action occurred in or around Collin County, Texas, which is in this District and Division.

## II. FACTS

6.  Ms. Bergman was previously employed by City House as the Director of Development.

7.  On approximately June 24, 2020, City House held a program to address race discrimination and other race-related issues stemming from George Floyd, other unjustifiable law enforcement deaths, and the Black Lives Matter movement.

8.  After the program, Sheri Messer, the CEO/Executive Director for City House, created several committees, made up of City House employees, in an effort to carry out the program's agenda.  Ms. Messer appointed a Committee Chair to lead each committee.  With the exception of one employee, [1] each appointed Committee Chair was Caucasian, and comprised of City House staff from the administrative and leadership teams.  No employees from the Direct Care Teams (the teams responsible for organizing the initial panel discussion) were assigned to committee leadership positions.

9.  Several employees raised concerns that only Caucasian employees had been appointed as Committee Chairs, despite the availability and willingness of several African-American employees. Ms. Bergman understood the employees' concerns, and agreed that it was inappropriate to only appoint Caucasian Committee Chairs to a program attempting to facilitate racial relations.

10.  Ms. Bergman shared her concerns with Ms. Messer, and explained that the lack of racial diversity among the committee leaders undermined the program's objectives.  Ms. Bergman

---

[1] Briah Nunn, who is African-American, was appointed as a "co-chair" on one of the committees. Ms. Nunn reported to Ms. Bergman.

was particularly vocal with respect to her subordinate employee's, Briah Nunn's, concerns regarding the leadership committees' racial composition.

11.  Ms. Messer summarily dismissed Ms. Bergman and the other employees complaints of racial discrimination.  Indeed, in response to Ms. Nunn's complaints, Ms. Messer instructed Ms. Bergman to "get her [Briah Nunn] under control."

12.  In response to Ms. Nunn's complaints, on or around August 19, 2020, Ms. Messer instructed Ms. Bergman to review and edit an email to Ms. Nunn stating that if she was not happy with her current employment, then Ms. Nunn should search for employment elsewhere.

13.  Ms. Bergman refused to draft and edit such an email because threatening to terminate an employee for making a race discrimination complaint (and/or to dissuade an employee from making additional discrimination complaints) was unlawful  retaliation.

14.  Ms. Bergman told Ms. Messer that sending such an email would be improper because the threatening email was motivated by Ms. Nunn's race discrimination complaints.

15.  On approximately, August 31, 2020, merely 12 days after refusing to engage in retaliatory conduct and less than one month after opposing and/or making a complaint of race discrimination on behalf of other employees, Ms. Bergman's employment was terminated.

16.  Ms. Messer told Ms. Bergman that she was being fired for insubordination because she objected to and refused to draft/edit an email to Ms. Nunn threatening her employment for complaining about race discrimination.

17. Since that time, Ms. Messer has attempted to change the reason for Ms. Bergman's termination.  Ms. Messer now alleges that Ms. Bergman was terminated because she "yelled" at Ms. Messer and kept raising an issue with respect to Paid Time Off (PTO) that Ms. Bergman believed she was entitled to based on language set forth in her employment offer letter.  In

actuality, Ms. Bergman was terminated for opposing/complaining about race discrimination.

### III.  CAUSE OF ACTION

*Violation of the Texas Labor Code & Title VII o the Civil Rights Act*
(Retaliation)

18.  Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 17 as if fully stated herein.

19.  Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE. §§ 21.001 *et. seq*. and the Civil Right Act of 1964 (as amended), 42 U.S.C. §§ 2000e *et. seq*. ("Title VII").

20.  Plaintiff dual-filed a charge of discrimination with the Texas Commission on Human Rights and EEOC on or about September 21, 2020.

21. Plaintiff received a right-to-sue from the EEOC on September 24, 2020.  This lawsuit is being commenced within ninety (90) days of receiving the right-to-sue.

22.  Defendant is an "employer" as defined by the TCHRA and Title VII.

23.  When Plaintiff worked for Defendant, she was an "employee" as defined by the TCHRA and Title VII.

24.  Defendant, by and through and its individual employees and agents, took tangible employment actions against Plaintiff (i.e., terminated her employment) because she opposed behaviors that she reasonably believed to be unlawful.

25.  Defendant intentionally and willfully violated Title VII and the TCHRA by retaliating against Plaintiff.  In illegally retaliating against Plaintiff, Defendant acted with malice and/or reckless indifference to the statutorily protected rights of Plaintiff.

26.  As a result of Defendant's retaliatory actions in violation of the Title VII and the

TCHRA, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), as well as emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. As a result of these willful/intentional violations of the TCHRA, Plaintiff requests that she be awarded all damages against Defendant, to which she is entitled, as outlined in the TCHRA and Title VII.

## IV.  JURY DEMAND

27.  Ms. Bergman demands a jury on all of her retaliation claims, specifically, the ultimate issues of fact as to the merits of the dispute, and damages, excepting the attorneys' fees issues.

## V.  PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendant as follows:

a.  Judgment against Defendant for actual damages, including lost wages and benefits;

b.  Judgment against Defendant for compensatory damages, (including mental anguish damages), in the maximum amount allowed by law;

c.  Judgment against Defendant for punitive damages;

d.  Injunctive relief;

e.  An order that Defendant take such other and further actions as may be necessary to redress Defendant's violation of Title VII and the TCHRA, including, if applicable, reinstatement to Plaintiff's former position (or front pay in lieu of reinstatement);

f.  Pre-judgment and post-judgment interest at the maximum amount allowed by law;

g.  Costs of suit, including attorney's fees; and

h.  The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**Carmen Artaza**
Texas State Bar No. 24055114
**Ashley Tremain**
Texas State Bar No. 24066209

**Tremain Artaza, PLLC**
13140 Coit Road, Ste. 104
Dallas, Texas 75240
Telephone: 469-573-0229
Facsimile: 214-254-4941
Carmen@tremainartaza.com
ashley@tremainartaza.com